## PEOPLE v. KUHN.

(Supreme Court, Appellate Division, Fourth Department. May 5, 1903.)

1. CRIMES—PLACING OBSTRUCTION ON TRACKS—EVIDENCE—SUFFICIENCY.

In a prosecution for placing an obstruction on a street railway track, and thus endangering lives, the evidence showed that a crowd, of which defendant was one, had been drinking quite heavily, and late in the evening went to take a street car to return home. Several cars were signaled, but did not stop; and some member of the party, becoming angry, placed the obstruction on the track to compel the car to stop. There was no evidence that this was done by defendant. On the other hand, there was evidence that he was at that time lying some distance from the track, in a drunken stupor. Although he escaped from the officer who arrested him, he surrendered himself into custody at the time of trial. *Held*, that the evidence was insufficient to warrant a conviction.

Adams, P. J., and McLennan, J., dissenting.

Appeal from Special Term, Monroe County.

Henry Kuhn was convicted of placing an obstruction on a street railway track, thereby endangering lives, and appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

P. Chamberlain, for appellant.
Howard H. Widener, for the People.

HISCOCK, J. The defendant was indicted for, and found guilty of, the crime of placing obstructions upon the tracks of the Rochester & Suburban Railway Company, in the county of Monroe, "thereby endangering the lives of persons," and upon such conviction was sentenced to imprisonment for not less than one year and three months, nor more than three years and eight months, in the State Prison at Auburn. It is urged in his behalf upon this appeal both that the evidence was insufficient to warrant such conviction, and also that erroneous rulings were made by the judge presiding at his trial, which materially prejudiced his rights. Inasmuch as we have reached a conclusion in favor of the first contention, thereby leading us to reverse the judgment and grant a new trial, it will be unnecessary to consider the exceptions to said alleged erroneous rulings.

There was no question upon the trial that upon the night of July 27, 1901, in the town of Irondequoit, Monroe county, obstructions were placed upon the track of the railway company above mentioned, in front of an approaching car, which were calculated to endanger the lives of passengers. While there was no direct evidence identifying the person who placed such obstructions upon said track, it was entirely permissible for the jury to find that they were placed there by one or more members of a party of five men, of which defendant was

one. The appellant, however, argues, that, although this was so, the evidence did not, with sufficient weight for the purpose of a conviction, warrant the conclusion that he either took part in the actual deposit of the obstructions upon the track, or, being present, aided, encouraged, or abetted those who actually did commit the act complained of; and it is in this view that we coincide.

The place where the crime was committed was situated in the suburbs of the city of Rochester. Defendant, in company with other men, during the afternoon of the day in question had been at a pleasure resort near by, and all of them had been drinking considerably. The extent to which they had indulged in this pursuit is differently estimated by different witnesses, some placing the limit at 30 glasses of beer apiece. Quite late in the evening, five of these men, including defendant, started to return to the city of Rochester, and for that purpose desired to take a trolley car upon the railroad line in question, and went to a point where the cars upon the line were ordinarily accustomed to stop to pick up passengers. As it is claimed without any dispute, several cars were signaled, which did not stop, and finally some of the members of the party, becoming angered at this refusal to take them up as passengers, conceived the plan of so placing obstructions upon the track as would compel the cars to stop; and this, as already stated, was done. There is no evidence of anything antedating the point when the approaching car ran into the obstruction which in any way connects defendant with the crime, except the fact that he was in this party. Upon the other hand, the direct evidence furnished both in his behalf, and by one or more witnesses called by the people, is that, when the party came to the track to wait for the car which should take them into the city, he, being more or less under the influence of liquor, laid down under a tree, and remained there, stupid or asleep, until after the perpetration of the crime. While some evidence is given in behalf of the people that the defendant was up and moving around the scene of the crime later, none of this evidence reaches into the period when he is claimed to have been lying under the tree, or directly contradicts his theory in regard to what he was doing earlier.

We must estimate with considerable caution the significance which upon this occasion is to be attached to the mere presence by defendant in a party of which some members committed a crime. Where such a party starts out with the design and purpose to commit a crime, which is thereafter actually perpetrated, the mere presence of a person, even though he is not shown to have taken part in doing the actual, specific act complained of, is concededly a very strong and potent circumstance. Upon this occasion, however, the party which included defendant did not start out with any criminal intent. The common purpose for which they left the pleasure resort was the innocent and proper one of taking a trolley car. The criminal intent and purpose grew up after they had reached the track, and had failed by proper methods to stop a car. The fact that defendant went with them to the car track is no evidence whatever that he had joined with them in the intent to commit the crime which afterwards occurred. If, as claimed by him, when he reached the tracks he threw himself down in a

drunken stupor, and remained there while the crime was planned and executed, and was only roused up thereafter, he was not such a party to the criminal project as warrants his conviction. The defendant took the witness stand, and thus subjected himself and his theory of defense to the test of a rigid cross-examination. The undisputed account of what he had been doing in the afternoon, and a very careful consideration of all the testimony directed to the exposure of what took place after the party reached the railroad, make us unwilling to hold that there was such a weight of evidence as overcame the presumption of defendant's innocence, and excluded every other reasonable theory except that of his guilt. Upon the other hand, the evidence rather impresses us that the appellant, upon arrival at the point of waiting, was in the condition claimed by him, and that the crime was committed by some other member of the party, who was less drunk and more intelligently active than he. The crime was a detestable one, and punishment for it properly and justly severe, and we are unwilling to allow defendant to suffer such punishment upon the evidence presented. In reaching this conclusion, we do not lose sight of the fact that he escaped from the custody of an officer having him in charge. There is, however, nothing especially unnatural or inconsistent with his claim of innocence in this act, considered in the light of his explanation. There was no dispute of his evidence that he remained near Rochester, and, when the time of his trial approached, voluntarily returned there and surrendered himself, to be again taken into custody. The judgment and order appealed from should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted. All concur, except ADAMS, P. J., and McLENNAN, J., who dissent.